## Appeal of the City of Pittsburgh.

40      455
e 29 SC   119

*Lien of Municipal Claim, as against prior Mortgage.—Act of February 3d 1824, as to Liens for Taxes, &c., in Philadelphia, construed.*

1. A municipal lien filed in 1857 by the city of Pittsburgh, for grading and paving, under the Act of 18th April 1857, is not entitled to payment out of the prcceeds of the sale of the property against which the lien is filed, in preference to a mortgage of the same premises entered and recorded in July 1848.

2. The Act of February 3d 1824, providing for the liens of taxes, rates, and levies in the city of Philadelphia, extended to Allegheny county, by Act April 5th 1844, does not give a lien for paving sidewalks in the city of Pittsburgh ; for the Act 18th April 1857, relating to setting curbstone and paving sidewalks therein, with the supplementary Act of 22d April 1858, provides a system of procedure, entirely different from that under the Act of 1824; the lien filed under the Acts of 1857 and 1858, having no priority in time over the mortgage entered in 1848, is consequently not entitled to payment in preference to it.

CERTIORARI to the District Court of *Allegheny county.*

This was an appeal by the Mayor and Aldermen of the City of Pittsburgh, from the decree of the District Court on the distribution of the proceeds of the sale of the real estate of Arthur McClelland.

A judgment was obtained by Isaac Jope to January Term 1859, No. 464, being a *scire facias* upon a mortgage, upon which a *levari facias* was issued, and the property, situated at the corner of Caldwell and Townsend streets, in the city of Pittsburgh, having a front on Caldwell street of 76 feet, and on Townsend street of 94 feet, being parts of lots No. 73, 74, and 75, in Scott's Plan, sold for $1200.

This mortgage was the first lien on the premises, and the only parties claiming against it were the appellants in this case. Their claim is upon a municipal lien for grading and paving, filed in the District Court under §§ 12, 13, 14, and 15, of an Act of Assembly, approved May 16th 1857, Pamphlet Laws, pages 545 and 546.  The amount of the claim as filed for Caldwell street was $187.73 ; for Townsend street, $91.90 ; and for Logan street, $22.24.

At the time the lien was filed, to wit, May 8th 1858, the defendant owned two separate blocks of lots ; the one sold in this

case, situated at the corner of Townsend and Caldwell streets, composed of parts of lots 73, 74, and 75, in Scott's Plan, and having a front on Townsend street of 94 feet, and on Caldwell street of 76 feet. The other, composed of lots 93, 94, and 95, in the same plan, having a front on Caldwell street of 118 feet, 5 inches.

Lots 93, 94, and 95, were sold by the sheriff on a *vend. exp.*, No. 206 July Term 1859, for the sum of $725, and lots 73, 74, and 75, were sold on *vend. exp.*, No. 353, November Term 1859, for $175. The money raised by both those sales was distributed by an auditor, appointed on No. 353, November Term 1859, without reference to the claim of the city.

The sale of lots 73, 74, and 75, on *vend. exp.*, No. 353, November 1859, was subject to the mortgage of Isaac Jope, for the payment of which the property was again sold as above stated.

The auditor appointed to make distribution reported, 1st. That the property on Caldwell street, sold in 1859 on *vend. exp.*, produced funds sufficient to pay the whole municipal lien. 2d. That the property on the corner of Caldwell and Townsend streets, sold on the *vend. exp.* in 1859, produced enough to pay the lien for Townsend street, but that these claims were not paid thereout; and being of the opinion that these sales divested the municipal lien of the city, awarded the whole of the fund to Isaac Jope.

To this report exceptions were filed for the city, which on hearing were dismissed, and the report of the auditor confirmed. The case was thereupon removed into this court, where the decree of the court below confirming the auditor's award was assigned for error.

*J. F. Slagle*, for appellant.—The liens authorized by the Acts of May 16th 1857 and April 28th 1858, are payable like other liens, and were, therefore, divested by the judicial sales of 1859. These liens are divisible, and should be apportioned upon the several lots. The sale of Nos. 93, 94, and 95, would divest no more than the proportion properly chargeable to those lots, and the balance of the lien being preserved by the mortgage of Isaac Jope, was not divested by the sale in 1859 on *vend. exp.* No. 353, that being a junior encumbrance : Northern Liberties *v.* Swain, 1 Harris 113; Perry *v.* Brinton, Id. 202; Act of February 3d 1824, Purd. 601; extended to Allegheny county by Act of April 5th 1844.

If then it remained a lien upon the property until the sale in this case, there is now for the first time a fund out of which the city can claim payment of that portion of the claim attaching to the lots covered by the mortgage. The court, therefore, erred in not awarding to the city the claim of $167.44 against these lots.

[Appeal of the City of Pittsburgh.]

*C. Hasbrouck*, for appellees.—The lien was not discharged by the sheriff's sale upon the mortgage, or by any previous sale, because the Act of 22d April 1858 makes it permanent "until paid," which words create a lien not discharged by a judicial sale: Medlar *v.* Aulenbach, 2 Penn. Reports 358; Mentzer *v.* Menor, 8 Watts 296.

Liens are perpetual on principle unless expressly limited. The Act of 1858 was passed to guard against their being discharged by judicial sales, and is in accordance with the Act of 18th April 1857, P. L. 240. Whenever, therefore, a judicial sale does not produce a fund sufficient to pay the municipal lien over and above all liens prior to the passage of the Act of May 16th 1857, the property remains charged with it in the hands of the purchaser.

The opinion of the court was delivered, November 7th 1861, by

THOMPSON, J.—The claim for which the lien in this case was filed, was for grading and paving the foot or side walks opposite certain lots, the property of Arthur McClelland, on Townsend, Caldwell, and Logan streets, in the city of Pittsburgh. The proceeds of the sale in dispute, were of lots on Townsend street, being but part of the lots covered by the municipal claim. The claim was filed under the provisions of the Act of 18th April 1857, which is entitled an act "concerning the setting of curb-stone, and the paving of sidewalks in the city of Pittsburgh." This act, with its supplement of 22d April 1858, furnishes a system on the subject of grading and paving in the city, and provides for the entry of liens for the same, their duration, and the manner of their enforcement. It certainly was not supposed that the Act of 1824, providing for the liens of taxes, rates and levies in the city and county of Philadelphia, and extended to Allegheny county by the Act of 5th April 1844, gave a lien in a case like the present, for those Acts of 1857–58 furnish an entire system independently of that act, differing very materially from it in details. We are, therefore, of opinion that the lien, if any existed, was by virtue of the Acts of 1857 and 1858. As a lien, therefore, under those acts, it had not priority in time over the mortgage, which was recorded July 27th 1848. It could not, therefore, be entitled to priority out of the sale on the mortgage. We see no authority to warrant us in giving this municipal lien a retroactive operation, and without doing so it can have no pretence to priority. This determines the whole question in the case, and that question was stated by the auditor to be, "Is this municipal claim to be paid out of this fund?" To this we answer, we think not, for the reasons given.

We do not decide other questions presented, and which were but very little examined or argued, such as, whether certain pre-

[Appeal of the City of Pittsburgh.]

vious sales had divested the municipal lien, or whether that yet remains on the lots covered by the mortgage. These questions were raised to prove the same result we have arrived at without them. We leave them to be determined when the occasion shall arise requiring it.

> The decree of the court confirming the auditor's report is affirmed, at the costs of the appellant.